### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD L. HAVENAR, III,            ) | |
|                                     ) | |
|       **Plaintiff,**                ) | |
|                                     ) | |
| vs.                                 ) | Case No. 09-CV-297-TLW |
|                                     ) | |
| MICHAEL J. ASTRUE,                  ) | |
| Commissioner of Social Security,    ) | |
|                                     ) | |
|       **Defendant.**                ) | |

### OPINION AND ORDER

Plaintiff Richard Havenar, III seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income ("SSI") benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 14].

Plaintiff filed his application for disability insurance and SSI benefits on March 15, 2006, claiming an onset date of January 15, 2006. [R. 87]. The relevant adjudicated period is from January 16, 2006 through June 9, 2008. [R. 12-19, 87, 117].

The Administrative Law Judge (ALJ) conducted a hearing on May 20, 2008. [R. 20]. Following entry of his decision denying benefits, the Appeals Council on March 26, 2009, denied plaintiff's request for review. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On May 26, 2009, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable

legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant adjudicated period. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources" such as licensed and certified psychologists and physicians. 42 U.S.C.§ 423 (d)(3), and 20 C.F.R. §§ 404.1513, 416.913.

Plaintiff raises two issues on appeal. Plaintiff contends the decision of the Administrative Law Judge (ALJ) should be reversed because:

    (1)    The medical evidence supports a finding that the plaintiff meets the requirements of Listing 12.05C, establishing per se disability.

(2)   The hypothetical question propounded to the vocational expert failed to include all plaintiff's mental limitations, rendering her testimony unreliable.

[Dkt. # 22 at 4-5].

## Background

Plaintiff was born on April 18, 1979, and was 26 years old on his alleged onset date. [R. 18, 87]. Plaintiff has a seventh grade education and attended special education classes. [R. 27]. He has been married three times and currently resides with his third wife and his two minor children from his first marriage. [R. 27, 87, 211-212]. He is 5 feet 8 inches tall and weighs 235 pounds. [R. 27]. Plaintiff has a drivers license, although he contends his reading skills are limited to children's books, and his writing skills are limited to printing his name. [R. 27-28, 35]. Plaintiff was employed from 1996 until 2007. [R. 92]. From 1996 to 2001, he worked various temporary jobs through a service, at a glass plant, and in construction. From 2002 to 2006, he worked as a tire technician for several companies, driving to locations and changing tires. [R. 92-98, 31, 118, 133-140, 210].

Plaintiff alleges that he injured his lower back on September 27, 2004, while stacking tires. [R. 194]. Plaintiff was treated by Sami Framjee, M.D. [R. 188-208]. Initially, Dr. Framjee treated plaintiff's injury conservatively. [R. 194]. Because of continuing symptoms, on November 12, 2004, Dr. Framjee performed a diskectomy, and a posterior fusion of the L5-S1 with hardware. [R. 180]. On March 2, 2005, plaintiff was released to return to work with the tire company. [R. 201]. On June 8, 2005, Dr. Framjee gave plaintiff a permanent partial impairment rating of 10%, and on September 25, 2005, plaintiff was awarded $30,000 in workers compensation benefits. [R. 103, 194]. On March 22, 2006, Dr. Framjee discharged plaintiff from his care and advised him to "return to work at his previous level." [R. 188]. From March 2007 to April 2008, plaintiff worked full time

as a truck driver for a trash service, earning $1,300.00 per month. [R. 28-29, 174].

Plaintiff alleges he became disabled on January 16, 2006, as a result of his back injury on September 27, 2004, and because of his inability to read or write. He claims, although he returned to work, he continues to have chronic pain. [R. 117]. Plaintiff alleges that his back injury limits his ability to stand, walk, sit, lift, bend and squat. [R. 117].

The ALJ found that plaintiff's employment as a full time truck driver qualified as substantial gainful activity, and that he stopped this work in the early part of May 2007. [R. 14]. Plaintiff's severe impairments were determined to be borderline intellectual functioning and low back pain. [R.14]. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, specifically listing 12.05 (mental retardation). [R. 14].

The ALJ found plaintiff has the residual functional capacity ("RFC") to perform a full range of light work, limited by his borderline mental functioning and his mild to moderate low back pain, and restricted to simple tasks that do not require reading and/or writing. [R. 16]. The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence and limiting effects of his symptoms. [R. 17]. The ALJ determined that plaintiff could not perform his past work, but retained the RFC to perform light work, with the above stated physical and mental limitations. Based on the testimony of the vocational expert, the ALJ found that plaintiff was qualified to perform work, such as office cleaner, press machine operator, assembler and grind machine operator, and these jobs existed in sufficient numbers to preclude disability. [R. 18, 22]. This finding was made at step five in the sequential evaluation outlined in <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52

(10th Cir. 1988) (discussing the five steps in detail).[1]

## Discussion

Plaintiff challenges the ALJ's findings at step three of the five-step sequential process, claiming he met listing 12.05C for mild mental retardation. Listing 12.05 is found at 20 C.F.R. Pt. 404, Subpt. P, App. 1., and consists of four levels of severity, shown in paragraphs A through D. The ALJ evaluated the severity of plaintiff's mental disorder under each of the four levels of severity under listing 12.05. Plaintiff only challenges the ALJ's assessment under paragraph C, mild retardation. Mental retardation is defined in 12.05, as:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.

Id. To meet the requirements of listing 12.05C, plaintiff must show he meets the definition of mental retardation and the two prong test found in 12.05C, which is: (1) a valid verbal, performance, or full scale IQ of 60 through 70, and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, subpt. P. App. 1, 12.05C. Plaintiff contends his IQ score of 70, in conjunction with his chronic back pain, satisfies these requirements.

In considering listing 12.05C, the ALJ stated:

> [T]he claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

significant work-related limitation of function. In this case, these requirements are not met because the claimant's IQ scores exceed the maximum allowed for meeting or equaling listing requirements by the absence of a physical or other mental impairment imposing an additional and significant work-related limitation of function.

[R. 15]. In evaluating plaintiff's mental functional capacity, the ALJ relied, in part, on an intellectual assessment performed by Dr. Denise LaGrand. He stated:

> The claimant's intellectual functioning was part of the disability evaluation by Denise LaGrand, Psy.D. on August 23, 2006. Dr. LaGrand learned of Mr. Havenar's functional illiteracy and that he had quit school in the 8th grade. Results from the Wechsler Adult Intelligence Test gave Mr. Havenar the score of 70 in each of the IQ categories, i.e., Verbal, Performance, and Full Scale. His cognitive functioning placed in the range of Borderline Intellectual Functioning. His ability to function independently was judged to be fair. His ability to deal with the public was viewed as good. . . . Dr. LaGrand opined that from a psychological standpoint the claimant['s] ability to perform adequately in most jobs was in the low to below average range. Also in that range were his abilities to handle work stress and to deal with supervisors and co-workers (Exhibit 6F).

[R. 17]. Aside from the IQ score and the opinion of Dr. LaGrand, the ALJ considered the opinion of the agency's medical consultant Janice B. Smith, Ph.D.:

> Medical consultant Janice B. Smith, Ph.D. made an analysis of the claimant's psychological status in a Mental Residual Functional Capacity assessment. Dr. Smith believed Mr. Havenar had marked limitations in handling detailed instructions. However, she also held that he was not significantly limited regarding simple instructions. He was also seen as not significantly limited in any aspects of social interaction, concentration and persistence, and adaptation. Dr. Smith affirmed that the claimant could work under routine supervision (Exhibit 9F).

[R. 17]. The ALJ concluded his assessment of plaintiff's mental functioning capacity stating:

> Regarding his mental functioning, Mr. Havenar was considered to be able to work by a clinical psychologist. Dr. LaGrand believed also that he was able to function independently. Finally, on October 27, 2006, approaching the first anniversary of his alleged onset, Mr. Havenar was seeking a sedentary job (Exhibit 12F, p.1).
>
> In sum, the above residual functional capacity assessment is supported by the assessments of Dr. Bird and Dr. LaGrand.

[R. 17]. Plaintiff has misconstrued the requirement of 12.05C. Under Tenth Circuit case law, a full scale IQ of 70 does not axiomatically qualify a person with mild mental retardation. "To satisfy Listing 12.05C, [claimant] must show 'a valid verbal, performance, or <u>full scale IQ of 60 to 69 inclusive</u> and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (emphasis added). Further, the ALJ may look to "probative countervailing evidence" in considering whether the plaintiff qualifies for mild mental retardation under 12.05C. See McKown v. Shalala, 5 F.3d 534 (10th Cir. 1993). In this instance, the ALJ pointed out Dr. LaGrand's assessment of plaintiff with borderline intellectual functioning, rather than mental retardation, and his ability to function independently was judged to be fair. The ALJ also considered Dr. Smith's opinion that the claimant could work under routine supervision.[2] There was no medical source opinion that contradicted the assessments of these medical experts. The ALJ properly relied on the opinion of plaintiff's treating physician, Dr. Framjee, who released plaintiff to return to work at his previous level. [R. 16]. Besides the specific step-three discussion, the ALJ referenced other evidence in the record in connection with his RFC at step four that supports his rejection of automatic application of the IQ score. The ALJ found:

> [H]is ability to work for much of the first half of 2007 undermines his allegation of disability. This work was done over a year after his alleged onset and it ended, apparently, only because his employer was fearful of a possible lawsuit. The

---

[2] Dr. Janice Smith, Ph.D. specifically negated plaintiff's claim of mental retardation. In her concluding remarks from her psychological review of plaintiff, Dr. Smith opined, "He was diagnosed with Borderline Intellectual Functioning. Although claimant has valid IQ scores of 70, his functional abilities and his diagnosis from the Psych CE indicate Borderline Intellectual Functioning rather than Mental Retardation. Claimant appears to be able to perform simple tasks that do not require reading or writing. [R. 229].

> claimant did not indicate he stopped working because he felt physically unable to continue his job. Further his treating physician released him to work at his previous level (Exhibit 3F, p. 1). This was done two months after his alleged onset of disability.

[R. 17]. At the hearing, plaintiff's chief complaint was that he could not find work purportedly because of the limitation caused by his lower back pain. The focus of his unemployment was not the result of his borderline mental functioning. Plaintiff conceded that if he had a better education, you would be able "to pick a job" where he could sit down in an "office building" and work. [R. 37]. However, the ALJ accepted the vocational expert's opinion that there were unskilled light exertional jobs in the regional and national economy that plaintiff could perform, taking into consideration plaintiff's full scale IQ of 70, with simple tasks that do not require reading and/or writing. [R. 16-19].

The Court finds substantial evidence supports the ALJ's finding that plaintiff's full scale IQ of 70 does not satisfy the requirements for 12.05C because of "other probative countervailing evidence," specifically, the uncontroverted opinions from clinical psychologists that plaintiff has the mental functional capacity to work. Because the Court has determined that the first prong of 12.05C is not satisfied, it is unnecessary for the Court to consider whether plaintiff's lower back pain, qualifies as "a physical . . . impairment imposing an additional and significant work-related limitation of function" under 12.05C.

Plaintiff also challenges the ALJ's hypothetical question to the vocational expert, contending that it is unreliable because the hypothetical failed to take into consideration all his mental limitations. The Court disagrees. The ALJ propounded the following extensive hypothetical question:

> ALJ:   Okay. Hypothetical, 29-year-old male, has a seventh grade education. His ability to read, write, and use numbers would be marginal or less. He can read children's books, maybe, that kind of thing, is that correct, sir ?
>
> CLMT: Yes
>
> ALJ:   All right, very limited as far as his, very marginal as far as his, his ability to read, write, and use numbers. Physically he would be able to perform, I want to consider light and sedentary work activity, occasionally he could lift and, and or carry up to 20 pounds, frequently lift and or carry up to 10 pounds. Under this hypothetical he would be able to stand and walk with normal breaks for up to six hours in an eight hour work day, use his hands for hand controls, feet for foot controls. He would be limited to occasional stooping, and occasional crouching. There would be no manipulative limitations, no visual limitations, no environmental limitations, and no communicative limitations. So basically, light and sedentary work activities as stated. Now, let me look at this. Okay, he carries a diagnosis of, of mental retardation. He has a verbal IQ of 70, a performance IQ of 75, full scale IQ of 70. He, he would be able to understand, remember, and carry out simple, but not detailed tasks that do not require reading or writing. He is able to work under routine supervision. He is able to complete a normal day and week, work week, from a mental standpoint and he could adapt to work situations. He is able to relate adequately to the general public, coworkers, and supervisors for work related purposes. He is afflicted with symptomatology from a variety of sources to include mild to moderate pain. But the pain would be of sufficient severity that it would be noticeable to him, but nonetheless he can remain attentive and responsive in a work setting and, and carry out work assignments satisfactorily. He does take medication to relieve some of his symptomatology. The appropriate use of the medication would not preclude him from remaining reasonably alert to perform required functions presented in a, presented in a work setting.

[R. 39-40]. Plaintiff contends the ALJ's hypothetical question to the vocational expert was inadequate, because it did not include a complete recitation of Dr. LaGrand's psychological evaluation of plaintiff. Plaintiff claims the ALJ should have included Dr. LaGrand's opinion that plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or coworkers is estimated to be low to below average.

The Court finds no error in the ALJ's hypothetical question. "The ALJ need include in his

hypothetical questions only those alleged impairments that the ALJ accepts as true." Talley v. Sullivan, 906 F.2d 585, 588 (10th Cir. 1990). The ALJ accounted for plaintiff's borderline intellectual functioning, but relied on the uncontroverted conclusions reached by the team of medical experts to find that his mental limitations would not preclude full time employment. Moreover, the ALJ clearly set forth plaintiff's limited ability to read and write and his full scale IQ of 70. Plaintiff does not challenge the RFC assessment made by the ALJ, and the ALJ's hypothetical is clearly incorporated in his RFC assessment. Moreover, in the hypothetical the ALJ asked the vocational expert to consider a diagnosis of mental retardation. Thus, the hypothetical question placed greater mental restrictions on the types of jobs to be considered by the vocational expert than found by the ALJ in his written decision that plaintiff did not meet the requirements for mild retardation under 12.05C. The fact that the vocational expert testified that plaintiff could perform more restrictive jobs would necessarily encompass plaintiff's ability to perform less restrictive jobs.

The ALJ's assessment of plaintiff's RFC is consistent with that of the mental RFC assessment made by the consultative psychologist, Dr. Janice Smith, which was affirmed by agency psychologist Dr. J. George. [R. 217, 295]. Their opinions were uncontroverted. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. He gave specific evidentiary reasons to support his conclusion that plaintiff had the mental and physical RFC to perform unskilled light work, with specific limitations. The ALJ then turned to the vocational expert for his opinion, which he gave. Moreover, plaintiff's primary concern was the availability of jobs as a result of his back injury and limited education, rather than an inability to work. The vocational expert testified that jobs were available in the region that plaintiff could perform. The Tenth Circuit instructs that "[h]ypothetical questions posed to vocational experts must

sufficiently relate the claimant's particular physical and mental impairments.  However, this court has held that the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ, and a hypothetical question will be improper only if it was clearly deficient."  Stowe v. Shalala, 13 F.3d 407 (10th Cir, 1993) (unpublished).[3]  The Court finds that the limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied.  Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 20th day of September, 2010.

_____
T. Lane Wilson
United States Magistrate Judge

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1:  10th Cir. R. 32.1.